C. C. CRANE, Appellee, v. ED LECLERE et al., Appellees; HARCOURT LAND COMPANY, Appellant.

November 20, 1928.

*Donnelly & Lynch,* for appellant.

*Otto L. Schluter,* for appellee.

Evans, J.—Decision herein turns upon a narrow question, and it is difficult to say whether it be one of fact or one of law. The plaintiff relies upon an unrecorded deed, executed by the  son of defendant Leclere to this appellant, which deed contained a clause assuming the mortgage debt. The defendant Leclere was the original debtor and mortgagor. He conveyed the property to his son, who held the same in trust only for his father. The record before us discloses hostility between the two defendants. It discloses that the plaintiff has had the active aid of the debtor Leclere, as against his codefendant, throughout the trial.

Sometimes we are confronted, in this class of cases, with apparent collusion between grantor and assuming grantee, whereby the plaintiff encounters difficulty in producing his proofs. That situation is not presented here, and for the purpose of weighing the evidence, we may regard the evidence of Leclere as being as favorable to the plaintiff as it can properly be made. Prior to the transaction under consideration, both the defendants had been more or less engaged in the real estate business, and each of them owned property which was held in the market for trade or sale. Harris, another real estate agent, brought them together in the trade now under consideration. The Harcourt Land Company was represented solely by Harcourt, and for convenience we shall refer to him as though he were the defendant. Harcourt had an apartment house at Kansas City, for which he was seeking a purchaser. Leclere had four properties, two of which were situated in Iowa, one in South Dakota, and one in Mexico. One of the Iowa properties consisted of the farm involved herein. It comprised 72½ acres, and was located near Central City. The other Iowa property was a farm of 140 acres, located in Appanoose County. This farm carried a mortgage of $5,000. The Central City farm carried a mortgage of $20,000, being the mortgage in suit. The parties formulated their contract and executed the same, but held it in abeyance for further inspection of the Kansas City property. The inspection was satisfactory, and the written agreement was put into effect. The respective valuations put upon the properties of each appear in the record without any dispute. These are set forth in the petition of the plaintiff, appellee herein, as follows:

"100 acres in Old Mexico at $50.00 an acre, $5,000.00
"160 acres in S. Dakota at $25.00 an acre, 4,000.00
"140 acres in Appanoose County, Iowa, at $100.00 an acre, the said land having a $5,000.00 encumbrance thereon, 14,000.00
"72 acres near Central City, Iowa, with a $20,000. encumbrance thereon, 45,000.00"

The agreed valuation put upon the apartment house was $218,000. The sum total of the valuation of the four properties of Leclere, being $68,000, was applied as a credit upon such amount, leaving a balance of a purchase price of $150,000.

$1,000 was loaned then and there by Harcourt to Leclere for immediate needs, and a balance due of $151,000 was agreed upon. By the written contract, Leclere agreed that he would pay this sum in monthly installments, of $1,250 each. There is no suggestion in the written contract of any assumption of any mortgage by Harcourt. Up to this point, there is no dispute in the record. Leclere executed his deeds after the execution of the written contract. In the deed executed by his son, covering the Central City farm involved herein, he included therein an assumption clause. The claim of Harcourt is that he received the deeds from Leclere without careful examination, and put them away, and failed to discover the assumption clause in the deed in question until about the 1st of September. In the meantime, Leclere was in Kansas City, in possession of the property. Harcourt contends that, the first time he saw Leclere after discovering the condition of the deed, he called his attention to the assumption clause, and objected to it, and gave him back the deed. This was about September 1st. Leclere had the deed in his possession for a brief time, but left it upon Harcourt's desk when he departed. This incident is not disputed, though there is some variance in the testimony of the two participants as to the details thereof. Mrs. Leclere was present, and was called as a witness by the plaintiff, and testified as follows:.

"I don't recall what was said at that time by Mr. Leclere to Mr. Harcourt. I saw Harcourt hand the deed to Leclere. Leclere laid it on the table, and when they were through talking, Leclere left the deed on the table."

Leclere justifies the form of the deed by reason of an alleged conversation to be referred to hereinafter. Leclere's version engrafts a verbal agreement upon the written contract. Plaintiff's petition herein, after setting forth the valuations of Leclere's property, which have been quoted above, alleges as follows:

"and that the two said mortgages,—to wit, the $5,000.00 mortgage on the Appanoose County farm and the $20,000.00 mortgage on the land near Central City, being, to wit, the land described in the mortgage Exhibit B attached hereto,—were to be assumed and paid by the defendant Harcourt Land Company, and figured *as part of the $68,000* to be allowed as a credit upon

the $218,000, as aforesaid; that the aforesaid and foregoing agreement was verbal; that, within a day or two after the making of the said *verbal agreement,* the said *verbal agreement* was *executed* by the parties thereto, to wit,''

It is thereupon averred that there was a deed, Exhibit D, given in execution of said verbal agreement. Leclere testified to the verbal agreement as follows:

''After agreeing upon these prices and properties, we took a trip, to inspect the land in Appanoose County and the property in Kansas City, going with Mr. and Mrs. Harris in their car. My wife and I and Harcourt went with them. That was in June, 1926. After inspecting the Kansas City property, on our return home in the automobile we had some further conversation. Q. And what was that conversation? A. As I remember, the conversation came up in this way: Mr. Harcourt asked me what I thought about the deal, now that I had inspected the property, and I told him that the deal looked all right, providing there would be no trouble about the mortgage on the Central City property in the way of a comeback on us; and Mr. Harcourt said that would be all right,—they would take that. That might not be the exact words, but words to that effect.''

We do not overlook at this point that the foregoing testimony of Leclere was followed by two very leading questions, vigorously objected to by appellant, both of which were answered in the affirmative, and were as follows:

''Q. Did you say to Mr. Harcourt at that time he would have to assume and agree to pay the $20,000?

''Q. Did Mr. Harcourt say to you, in the prior negotiations, that he would agree to assume and pay that $20,000 mortgage on the Central City farm?''

On so vital a question, the plaintiff can be permitted to gain nothing by an examination in this form. The witness had stated the conversation as he remembered it. It could not properly be expanded by the asseverations of an interrogatory. The two interrogatories here quoted are illustrative of too much of this record. Such a method of examination upon vital questions only serves to increase the burden of the court in separating the proper from the improper. Moreover, the affirmative answer

to the last question created a grave inconsistency with the written agreement and with the application of credits thereon, and with the allegations of plaintiff's petition above set forth. Leclere further testified on this subject, on cross-examination, as follows:

"We had agreed on the terms of the trade before we went to inspect the properties. The $218,000 valuation and the valuations per acre on my property had all been agreed upon before I went down to inspect it. Q. So that, when you were leaving Kansas City, Harcourt had inspected the Appanoose County land; and you had inspected the Kansas City apartment? A. Yes, and it was up to me to say whether we would trade or not. Q. And you then said that you would? A. Yes. Q. After you said that you would trade, and while you were on your way back to Cedar Rapids, did you have this talk that you referred to on your direct examination? A. Yes. Q. And was it then that you said that the only thing that you were particularly concerned about in the trade was on account of your boy's liability on this mortgage? A. Well, I didn't want any trouble for him. Q. Is that about what you said at that time? A. Yes. Q. And J. M. Harcourt, at that time, said, in substance, that you would not need to worry about that, or something to that effect,—is that it? A. Yes. Q. And that was the substance of the talk, and all the talk that you had on that subject on the trip, as far as you remember? A. Yes."

Plaintiff's witness Harris testified to such conversation as follows:

"Q. Now did you hear any conversation, coming home, between Leclere and Harcourt in reference to this deal, and particularly did you hear any conversation about the Harcourt Land Company, assuming the $20,000 on the Central City farm? (That is objected to as leading and suggestive, calling for the opinion and conclusion of the witness, hearsay, and not binding upon the Harcourt Land Company.) A. Well, it was not just 'assuming' it, that way,—no. Q. What was said about it? (Same objection.) A. Well, Mr. Leclere said; 'Now I want to make the deal, but,' he said, 'I don't want any responsibility to come back *on my boy* on these mortgages.' Mr. Harcourt assured him that there would be no responsibility, if he took care

of the payments down there. Q. Did you hear Leclere say to Mr. Harcourt that he wanted him to assume the mortgage on the Central City farm, or otherwise he would not deal? (Objected to as leading and suggestive, and not binding on the Harcourt Land Company.) A. I never heard that 'assume' word. Q. Did you hear Leclere say to Harcourt that he would have to take care of the $20,000 on the Central City farm? (Same objection.) A. Well, he didn't want them to come back *on his boy.* Q. By that, you understood at least that he wanted it fixed so that they could not come back? (Same objection, leading and suggestive, calling for the opinion and conclusion of the witness, based upon hearsay, and incompetent.) A. Yes.''

Harcourt's version of what he said was:

''If you take care of the Kansas City [proposition], we will work out the Central City proposition for you some way. That is, if he would take care of the $1,250 a month that he agreed to pay there, I would work out the proposition on the Central City some way. There was not anything said in the automobile at any time on our way back from Kansas City in which I was asked to assume, or in which anything was said about an assumption of this mortgage debt.''

The mortgage in question represented a loan which Leclere had negotiated on September 1st preceding. It was for a term of five years, at 5½ per cent semiannual interest. The first installment of interest had been paid thereon on March 1st. The mortgagee was a tenant on the premises. Harcourt knew of the mortgage. His attitude toward it, as claimed by him, was that his primary concern was over the purchase money of his Kansas City property; that, in the interest of his trade, he was willing to take a chance on the ability of Leclere to take care of his $20,000 mortgage when it should mature.

The record discloses that the executory contract pursuant to which this deed was executed was never performed by Leclere. He never paid a dollar on any installment. On the contrary, $4,000 additional was advanced to him, and his debt became thereby increased to $155,000. Leclere sold to one Carr, who performed no part of the contract, so far as Harcourt was concerned. It is not denied that the contract was breached by Leclere, and that Harcourt re-entered into possession, and that

the property had depreciated, to the damage of Harcourt, in the sum of $25,000 or $30,000.

It will be seen from the foregoing that the question before us carries a double aspect: (1) Was the assumption clause in accord with the real understanding and intent of the parties? (2) Was there any consideration therefor?

In this class of cases, we have uniformly held that the mortgagee stands in no better position in the enforcing of an assumption clause than the grantor himself, who accepted it from the grantee. The mortgagee is ordinarily subject to any defense which is available to the grantee against his grantor. So that, in considering the rights of the mortgagee, we must consider first the rights of Leclere, as the grantor in the deed and the debtor under the mortgage.

The usual consideration for an assumption clause is that the amount of the assumed incumbrance is deducted from the purchase price. If, in such a case, the assuming grantee should fail to pay the assumed incumbrance, whereby the grantor, as debtor, is compelled to pay the same, then such grantor has a right of action against his grantee, to recover the rest of his purchase price. *Lamka v. Donnelly,* 163 Iowa 255; *Hawn v. Malone,* 188 Iowa 439; *Shult v. Doyle,* 200 Iowa 1. The grantor, therefore, continues as a party in interest in such a case. The right of the holder of the assumed mortgage is derived through the grantor in the deed. We have held also, that, as against the mortgagee, the real contract between grantor and grantee may be shown by oral evidence, even though it contradict the writing. *Peters v. Goodrich,* 192 Iowa 790. We have held also that, as between assuming grantee and the holder of a mortgage, a reformation of the contract is not essential to the defense, where the oral evidence contradicts the writing. *Nissen v. Sabin,* 202 Iowa 1362. The reason for this holding is that, inasmuch as oral evidence in such a case is admissible without reformation, the necessity for reformation is thereby eliminated.

Bear in mind, therefore, the general rule that the right of the plaintiff in this case can rise no higher than the rights of Leclere, if he were plaintiff, and as such were seeking to enforce the assumption clause. There is no dispute in the record that $45,000 was agreed upon as the price or value at which the farm

in question was to be taken by Harcourt. That was the purchase price. If Harcourt had paid Leclere $45,000, pursuant to the transaction, it would seem apparent that, in so doing, he would have performed the assumption clause, so far as Leclere was concerned. If it had been a cash transaction, we would naturally infer that $25,000 would have been paid, and the remaining $20,000 of the purchase price would be covered by the assumption clause. The fact that this was not a cash transaction, and that the parties dealt in debits and credits, may have resulted in some mathematical confusion to one or both of them. The full valuation of Leclere's properties, as agreed on, was $68,000. If the grantee was to assume the mortgages of $25,000, as claimed, then the amount to be paid by the grantee would be $43,000. In like manner, such would be the amount to be credited upon the Kansas City property. The Appanoose County land carried a $5,000 mortgage. The evidence shows that there was no assumption clause in the deed of conveyance of that land. Effect being given to the assumption clause involved in this suit, only $48,000 should have been applied upon the contract of purchase of the Kansas City property. Leclere did receive a credit for $68,000. He did, therefore, receive the full price agreed upon as the value of that farm. This fact bears with great influence upon both aspects of the question, as we have stated it above. As a circumstance, it corroborates very persuasively the attitude of Harcourt, and contradicts that of Leclere. The parties could not consistently have contemplated full payment to Leclere, and still a liability to the mortgagee for the amount of the mortgage. Leclere testified to the value of his farm at approximately $620 an acre. He fixed the round number, $45,000. He has received full benefit of that price. The problem presented to us by this record suggests two possible solutions. The first is that the parties may have become mutually confused in their mathematics. This would be a mutual mistake. The second solution is that it was not intended by the parties that the grantee should assume the mortgage. It will be noted that the petition of plaintiff, as we have above set forth, alleged that the $20,000 mortgage was to be assumed *"as part of the $68,000* to be allowed as a credit upon the $218,000, as aforesaid."* This allegation is itself not free from confusion, but it indicates clearly enough that the assumption of the $20,000

mortgage was to be a part of the $45,000 purchase price. If Leclere were suing for the enforcement of this assumption clause, could he escape the defense that he had already received the full purchase price? : If such defense would be available against Leclere, it is available against the plaintiff. It would be quite immaterial, for the purpose of such defense, whether the assumption clause should be deemed a mutual mistake, or non-existent, or having no consideration. If we take Leclere's own evidence of the conversation testified to by him, it fails on its face to show an assumption agreement. In so far as it tends to show such agreement, it is seriously contradicted by the fact that he was knowingly receiving the full purchase price as a credit upon his contract. This circumstance is more persuasive than the direct testimony of either party, or of any witness. The circumstance itself is undisputed, and it becomes the anchorage of the case, so far as the finding of facts is concerned. We should not be justified in finding the facts inconsistent with such undisputed circumstance. Moreover, if the fact in this respect were deemed doubtful, the second aspect of the case arises: What was the consideration for such an agreement? Ordinarily, the consideration for such an assumption is to be found in the contract of sale. That is to say, the amount of the assumption is deducted from the agreed purchase price. There is nothing of that kind here. There has been no deduction from the purchase price. The theory of plaintiff seems to be that the consideration for the written assumption contained in the deed was the previous alleged verbal agreement testified to by Leclere. In that conversation, Leclere purports to be concerned for the protection of his son, who held the legal title. But his son had not assumed the mortgage, and had no liability therefor. Moreover, what was the consideration for the verbal agreement? It was no more valid without a consideration than a written agreement would be. The substance of Leclere's testimony is that, after the principal contract was agreed to, then this verbal agreement was had. True, he testified, in answer to a leading question, that such had been the agreement from the beginning. In this he is contradicted by the written contract. Whether we treat the alleged verbal agreement, therefore, as having been made before

the written contract or after the same, it stands, in either alternative, as having no consideration.

This feature of the record is somewhat emphasized by reference to the third defense set up, viz: failure of consideration. This assumption, if any, was a part of an executory agreement, which was never performed by Leclere. He is confessedly in default. Could he have maintained an action, under such circumstances, against this defendant for performance of a part of an executory contract which he himself had breached? It is suggested by plaintiff's counsel that the defendant got Leclere's property. The record discloses it to have been a very barren gift. The farm in question was taken at a valuation of $45,000, and is sold under the mortgage for approximately $15,000, and a deficiency judgment of approximately $8,000 has been rendered against this defendant. The Appanoose County property was turned over to Harris, as his commission. The Mexico property and the South Dakota property have never been inspected, and are claimed to be worthless. This is not a very material observation. This defendant took them at the agreed price, and in legal contemplation he paid the price.

Upon this record, we reach the conclusion that, as a matter of fact, this defendant never agreed to assume the mortgage, though he did, in effect, consent that it might remain upon the property until its maturity. We are of the opinion, also, that there was no consideration for the assumption clause.

For the reasons herein indicated, the decree below must be —*Reversed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.