THELMA SLACK, Appellant, v. THELMA LEE SCHWARTZ, by J. FRED SCHWARTZ, Her Guardian ad Litem, Respondent.

No. 3418

August 13, 1945.                161 P. 2d 345.

*Morse & Graves,* of Las Vegas, for Appellant.

*Thurston & McNamee,* of Las Vegas, for Respondent.

## OPINION

By the Court, TABER, C. J.:

At about 5:40 p. m. on March 4, 1943 a Buick automobile being driven by appellant (defendant) and a Chevrolet automobile being driven by a Mr. Waddell

collided at the intersection of Carson and Seventh streets in the city of Las Vegas. Immediately prior to the collision the Buick was proceeding easterly on Carson street and the Chevrolet southerly on Seventh street. The Buick was traveling at a higher rate of speed than the Chevrolet. The Buick was a long car, weighing 4,565 pounds; the Chevrolet was shorter, and weighed 2,725 pounds. As the cars collided appellant lost control of the Buick, which swerved and skidded across Seventh street, striking and injuring respondent (plaintiff), a pedestrian.

On May 22, 1943, two suits growing out of said accident were commenced in the Eighth judicial district court, Clark County. In one of these, No. 17206, the parties were Thelma Lee Schwartz, by J. Fred Schwartz, her guardian ad litem, plaintiff, and Lillian Cox and Thelma Slack, defendants. Lillian Cox, the owner of the Buick, was riding with Thelma Slack when the accident occurred. Said action (17206) was brought to recover damages for injuries sustained by plaintiff, a minor. In the other of said actions, No. 17208, the parties were J. Fred Schwartz and Thelma G. Schwartz, plaintiffs, and Lillian Cox and Thelma Slack, defendants. The plaintiffs in this action were the parents of said Thelma Lee Schwartz, and the action was brought to recover for the loss of her services.

Demurrers to both said complaints were sustained. Amended complaints were filed June 29, 1943. On July 6, 1943, motions were made in both cases to strike the amended complaints from the files, to strike portions of said amended complaints, and to dismiss said actions. These motions were argued on July 16, 1943, and at the conclusion of the oral arguments the court ordered that plaintiffs have ten days in which to submit their authorities, defendants ten days in which to submit their answering authorities, and plaintiffs ten days in which to submit their replying authorities. No authorities were submitted at any time pursuant to said order.

On July 24, 1943, action No. 17826 was commenced

in said district court, the parties therein being Thelma Lee Schwartz, by J. Fred Schwartz, her guardian ad litem, plaintiff, and Thelma Slack, defendant. This action, like No. 17206, was brought to recover damages suffered by the plaintiff as the result of said accident.

On July 27, 1943, the clerk, upon request of plaintiff, entered judgment of dismissal in said action No. 17206. The record does not show any further proceedings in case 17208 than those hereinbefore mentioned.

On August 4, 1943, a demurrer to the complaint was filed in said action No. 17826. This demurrer was argued September 17, 1943, and the case thereupon continued, upon defendant's request, to September 24, 1943. The demurrer was overruled on October 1, and defendant filed her answer October 21. Plaintiff's reply was filed December 2.

On the opening day of the trial, February 23, 1944, and before the taking of any testimony, defendant moved for judgment on the pleadings, and objected, upon three grounds, to the taking of any testimony. Said motion was denied, and said objection overruled. The trial proceeded to its conclusion, and the court rendered and entered judgment awarding plaintiff damages in the sum of $6,250, with costs. The present appeal is from that judgment, and from a later order denying defendant's motion for a new trial.

Appellant contends that said district court action No. 17826 is barred because No. 17206 is still pending and undetermined. She maintains that plaintiff's purported dismissal of case No. 17206 was ineffectual and void because not made "before trial."

Section 8793 N. C. L., as amended, reads in part as follows: "An action may be dismissed, or a judgment of nonsuit entered, in the following cases: 1. By the plaintiff himself at any time before trial. * * * 4. By the court when upon trial and before the final submission of the case the plaintiff abandons it * * *." Stats. of Nev. 1939, chap. 36, p. 33, 2 N. C. L. Supp., 1931–1941, p. 1199.

Section 8754 N. C. L. 1929, as amended, reads in part: "An issue of law shall be tried by the court, unless it is referred upon consent   *   *   *." Stats. of Nev. 1935, chap. 91, p. 209, 2 N. C. L. Supp. 1931–1941, p. 1196.

Appellant further directs our attention to secs. 8755, 8756, and 8757, N. C. L. 1929, and to district court rules V, VI, VII, and XI. She takes the position that the hearing of her motions, on July 16, 1943, to strike and to dismiss, constituted a "trial," and that the trial of the case (No. 17206) was finally submitted on that date, notwithstanding the thirty days allowed counsel to submit authorities. Therefore, argues appellant, the dismissal on July 27 was not a dismissal "before trial," and so it was error for the trial court to overrule a special demurrer which had been interposed by defendant to plaintiff's complaint, to deny her motion for judgment on the pleadings, and to overrule her objections to the introduction of certain evidence—said demurrer, motion and objections having all been based upon the theory of pendency of another action in the same cause.

■ Appellant's contention that action No. 17826 is barred because the purported dismissal of No. 17206 was void has been argued in extenso by respective counsel. After carefully considering our statutes and rules of court and the numerous authorities cited by counsel, the court is convinced that appellant's contention is not correct. Even if we were to adopt appellant's view that her motions to strike the amended complaint and to dismiss the action constituted a trial within the meaning of said amended sec. 8793, we would still be of the opinion, because of the court order of July 16, 1943, allowing time for the submission of authorities, that said trial was not under final submission at the time action No. 17206 was dismissed. Campbell v. Nelson, 102 Utah 78, 125 P. 2d 413; Reynolds v. Vidor, 45 Cal. App. 2d 685, 114 P. 2d 617; Molen v. Denning & Clark Livestock Co., 56 Idaho 57, 50 P. 2d 9; Annotation, 89 A. L. R. 13, 53–54; Thompson v. Schalk, 228 Iowa 705, 292 N. W. 851; Crane v. Leclere, 206 Iowa 1270, 221 N. W. 925;

Id. 204 Iowa 1037, 216 N. W. 622; Plattsmouth Loan & Bldg. Ass'n. v. Sedlak, 128 Neb. 509, 259 N. W. 367.

Defendant's next contention on this appeal is that the trial court erred in declining, at her request, to join her husband with her as a party defendant. This contention is based upon amended sec. 8546, N. C. L. 1929. Stats. of Nev. 1937, chap. 15, p. 29, 2 N. C. L. Supp. 1931–1941, p. 1177. The section reads as follows: "When a married woman is a party, her husband must be joined with her, except: 1. When the action concerns her separate property, or her right or claim to the homestead property, she may sue alone. 2. When the action is between herself and her husband, she may sue or be sued alone. 3. When the husband resides out of, has departed from, or after due diligence cannot be found within the state, or she is living separate and apart from her husband by reason of his desertion of her, or by agreement, in writing, entered into between them, she may sue or be sued alone."

Defendant was not married at the time of the accident, nor when the present action was commenced. Her marriage took place on August 31, 1943. This was twenty-seven days after she demurred to plaintiff's complaint, seventeen days before the demurrer was argued, and a month before it was overruled. A further three weeks expired before her answer was filed. It was not until the opening day of the trial, February 23, 1944, that the court or plaintiff was informed of defendant's marriage. On that day her counsel informed the court and counsel for plaintiff that he had learned for the first time on the preceding Sunday (February 20) that defendant had married since the commencement of the action. On the trial defendant admitted that she and her husband were not then living together and had been temporarily separated for a period of approximately two to three months. On said opening day she moved the court for an order joining her husband as a party defendant with her. The motion was denied.

■ Section 17½, added in 1933 to the 1873 act defining

the rights of husband and wife, provides that "Neither husband nor wife is liable for the debts or liabilities of the other incurred before marriage." Stats. of Nev. 1933, chap. 96, p. 118, 1 N. C. L. Supp. 1931–1941, p. 431, sec. 3371.01. Under this section we hold that in Nevada the husband is not liable for the antenuptial torts of his wife. McElfresh v. Kirkendall, 36 Iowa 224, 226, 227; 1 de Funiak, Principles of Community Property, sec. 158, p. 443, n. 24.

In McElfresh v. Kirkendall, supra, the statute read, "Neither husband nor wife is liable for the debts or liabilities of the other incurred before marriage * * *." Acts Iowa 13th Gen. Assem., c. 126. In the course of its opinion the supreme court of Iowa used this language: "The words 'debt' and 'liability' are not synonymous, and they are not commonly so understood. As applied to the pecuniary relations of parties, liability is a term of broader significance than debt. The legal acceptation of debt is a sum of money due by certain and express agreement. Black. Com. Book 3, 154. Liability is responsibility; the state of one who is bound in law and justice, to do something which may be enforced by action. This liability may arise from contracts either express or implied, or in consequence of torts committed. Bouvier's Law Dict. * * * If the distinction between a debt and a liability is maintained, the construction becomes easy. The husband is discharged from liability for the debts or liabilities incurred by the wife before marriage. * * *."

The word "liabilities" is not limited in its meaning to contractual liabilities, but applies also to liabilities for torts. Miller & Lux v. Kern County Land Co., 134 Cal. 586, 66 P. 856, 857; 25 Words and Phrases, Perm. Ed., pp. 58, 59; 2 Bouvier's Law Dictionary, Rawle's Third Division, p. 1950. In Miller & Lux v. Kern County Land Co., supra, the supreme court of California said: "The word 'liability' has always been held to apply to responsibility for torts as well as for breach of contracts."

Van Maren v. Johnson, 15 Cal. 308, so strongly relied

on by appellant, is not in point here because in this state, since 1933, the husband is not liable, to the extent of the community property, or at all, for the antenuptial torts of the wife.

■ It does not necessarily result from what has been said that a husband need not be joined as a party defendant with his wife even where her alleged tort was committed before their marriage. Hageman v. Vanderdoes, 15 Ariz. 312, 138 P. 1053, L. R. A. 1915A, 491, Ann. Cas. 1915D, 1197. Amended sec. 8546, N. C. L. 1929, as we have seen, expressly provides that, with certain exceptions, when a married woman is a party, her husband must be joined with her. This requirement, however, even if applicable in a case like the present where the wife was not married when the action was commenced, is not jurisdictional, because here the husband is not liable for the alleged antenuptial tort of his wife; and for the same reason the husband was not an indispensable party. Stratton v. Beaver Farmers' Canal & Ditch Co., 87 Colo. 349, 287 P. 861; Id., 82 Colo. 118, 257 P. 1077; Cameron v. International Alliance, etc., 117 N. J. Eq. 577, 183 A. 157.

■ If the husband were an indispensable party in the present case, failure to make him a party defendant with his wife would affect the jurisdiction of the court, and the point could be raised on appeal even if not urged in the court below. Perkins v. Benguet Consol. Mining Co., 55 Cal. App. 2d 720, 132 P. 2d 70, 95. But as the husband is not liable in this state for the antenuptial torts of the wife, we think the trial court in the instant case was justified in considering whether the application for joinder of the husband was timely and properly made. The husband himself, it may be observed, did not ask the court to make him a party. Defendant, as we have seen, was married August 31, 1943. Her answer was not filed until October 21, 1943. She made no application of any kind to have her husband joined with her as party defendant until February 23, 1944, the opening day of the trial. We think there was no error, certainly

no prejudicial error, in denying defendant's motion for an order joining her husband as a party defendant.

■ There remains for consideration appellant's final contention that the damages awarded plaintiff by the trial court are excessive. She points out that the only medical testimony in the case was that of a dentist whose testimony, it is claimed, shows that the only physical injury sustained by plaintiff was the loss of five upper teeth. At the time of the trial, says appellant, plaintiff was wearing a removable bridge, which at the age of eighteen would be replaced by a fixed bridge.

Appellant further directs attention to the fact that plaintiff did not call the medical doctor who treated her, and that the following stipulation was entered into by respective counsel: "It is stipulated between counsel for the plaintiff and defendant, if your Honor please, that if Dr. Stanley L. Hardy, a duly licensed qualified doctor practicing in the State of Nevada, was called as a witness and was present at the present time, that he would testify that judging from his examination made on Friday, February 25, 1944, the party for whom the action is prosecuted, Thelma Schwartz, is suffering from no physical impairment requiring treatment at the present time, as a result of the injuries sustained by her in the accident that occurred March 4, 1943."

Appellant invokes the alleged presumption that plaintiff by failing to call Dr. Hardy acknowledged that his evidence would have been used against her.

Appellant further points out that under the provisions of amended sec. 8554 N. C. L. 1929, 2 N. C. L. Supp. 1931–1941, p. 1178, Stats. of Nev. 1939, chap. 24, p. 17, the damages to be given should be such as, under all the circumstances of the case, may be just. A summary of the testimony relating to respondent's injuries will aid in determining whether the amount of the trial court's judgment, $6,250, was excessive.

William L. Himmelreich testified that immediately after the accident plaintiff was lying on the ground and bleeding in the mouth.

Samuel Arthur Waddell, who was driving the Chevrolet, testified that plaintiff was struck by the quarter-glass of the Buick, back of its right rear door; that the whole side of the car hit her, but the glass seemed to strike her directly in the face; that she was knocked past the telegraph pole that was between the sidewalk and the curb; that she was knocked rolling, just like you would kick a football—rolling sideways; that her clothes were about half torn off her, stockings were torn, knees skinned, she was bleeding from the mouth and nose, and her face was pretty badly cut.

J. Fred Schwartz, father and guardian ad litem of the plaintiff, testified that by actual measurement the Buick knocked plaintiff 42 feet; that her physical condition was perfect before the accident; that she was fourteen years old when the accident happened; that when an ambulance arrived, she was picked up, put on a stretcher, lifted into the ambulance and taken to a hospital; that she had a gash in the back of her head, a large bump on the left side of her forehead, face skinned and cut, nose pushed slightly to left, front teeth knocked out, mouth and nose bleeding, chin and upper lip cut, knee bruised up, legs black and blue, left ankle bruised and right hand scratched; that four teeth were missing, and a fifth that was broken off half way had to be removed; that she remained in the hospital several days; that when she was taken home from the hospital her shoulder was in a cast, there were scabs and scars all over her face and forehead and on the back of her head, she complained of her finger hurting her, her lips were swollen, and gums and mouth sore; that she remained in bed at home about three weeks; that five false teeth were put in by the dentist; that immediately after the accident plaintiff's dress was torn, her slip was torn, her hose were torn beyond repair, and there was blood all over her clothes; that at the time of the trial, besides the five false teeth replacing one eye tooth and four front teeth next to it, her nose was still crooked, bent over to the left, she had a scar on her lip and on

her chin, was very nervous and irritable, had a tendency to cry at most anything, cried out in her sleep and walked in her sleep; that the right rear quarter-glass of the Buick was completely shattered, and there was quite a large dent in the right rear fender.

Plaintiff testified that she was hit in the face and knocked out, and the next thing she remembers was being put on the X-ray table in the hospital; that besides the injuries mentioned by her father she had a broken collar bone, two ribs cracked, a bone in the first part of her first finger cracked, and nose broken; that she suffered various pains, both before and after leaving the hospital (giving details) ; that while she was in bed at home her mouth was so sore that it was very difficult for her to eat; that the dentist had to perform surgery in her mouth, some of it very painful; that the five teeth lost were from her second set of teeth; that up to and at the time of the trial her left knee kept acting like it was going to slip out sometime, and her left ankle turned over quite easily, besides hurting her; that she had headaches, but did not have them before she was hurt.

Thelma Schwartz, mother of plaintiff, testified that when she first saw plaintiff after the accident, she was lying in the street, unconscious; that she talked to her, but there was no response; that her daughter's eyes were wide open, but glassy; that up to this time plaintiff had never been to a doctor in her life; that since the accident she had had headaches, talked and moaned in her sleep, walked in her sleep, and complained of her left knee, ankle and shoulder; that she played the accordion normally before the accident, but had not been able to hold it, except for a little while at a time, ever since; that she was self-conscious about her teeth, and talked in her sleep almost every night; that she had never walked or talked in her sleep before the accident, but had done both since.

Dr. Woodbury, in addition to matters already mentioned, testified that the alveolar process was fractured

in several places, and he had to take out the part of the process that had become uneven, so plaintiff could wear a partial denture; that this required an operation which was performed under a local anesthetic; that he made a removable bridge for her which she was wearing; that she was too young to have a fixed bridge made, and he had recommended that a fixed bridge be constructed for her at about the age of eighteen.

If plaintiff had called Dr. Hardy, her main object would have been to produce corroborative or cumulative evidence. Defendant produced no evidence to contradict the positive testimony of plaintiff and her other witnesses concerning the injuries. Medical testimony was not legally necessary in this case to show their nature or extent.

It is true that the trial court, in its written "decision," said that plaintiff, at the time of the collision, was standing in a "safey zone." In its findings of fact, however, that court found that she was standing "on the sidewalk at or near the corner of 7th and Carson streets." There is substantial evidence to support this finding.

Appellant further contends that it was error for the trial court to say in its written decision that "As to the fixing of damages, it may appear that the damages fixed are somewhat high; but in view of the times, the increased cost of living, the increased cost of care and attention, and the law of the cases controlling in damages of this type, the court doubts the inadequacy (sic) of the damages it now declares to be suffered by the plaintiff." Error is also predicated upon the ground that no permanent impairment of plaintiff's earning capacity was alleged or proved. As neither of these points was raised until appellant's reply brief was served and filed, they will not be considered. The case was submitted on briefs, by stipulation, without oral argument.

■ The amount to be awarded as damages in this case was a matter resting within the sound discretion of the trial court. We will not disturb the judgment because,

in view of all the evidence in the case, the amount of damages is not so excessive as to indicate prejudice or passion on the part of the trial court; the award is not so outrageous, nor so clearly beyond reason as to shock the judicial conscience, or show that the trial judge acted with partiality or with a perverse disregard of justice. If the facts and circumstances in this case were such as to indicate that the amount fixed as damages was the result of bias, prejudice, or gross overestimate, we would not hesitate to disturb the judgment.

There is nothing whatever in the record to indicate that there was any intention on the part of defendant to cause injury to plaintiff or anyone else, but it is so plain from the evidence that defendant's negligence was the sole proximate cause of plaintiff's injuries that we have not found it necessary to detail the facts of the accident . or the circumstances attending it.

The judgment and order appealed from are affirmed.