**BALLARD et al. v. FORBES.**

**No. 4746.**

United States Court of Appeals,
First Circuit.

Jan. 4, 1954.

884

Joseph F. Dolan, Boston, Mass. (James L. Haley, Boston, Mass., on the brief), for appellants.

Harry Kisloff, Boston, Mass. (Herbert C. Feinstein, Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by the defendants from an amended judgment entered by the United States District Court for the District of Massachusetts on November 3, 1952, upon a jury verdict for the plaintiff. The defendants also appeal from an order entered February 11, 1953, denying the defendants' motion to set aside the verdict and enter judgment in accordance with their motion for a directed verdict or for a new trial. This court has jurisdiction under 28 U.S.C. § 1291.

The plaintiff is the administratrix of the estate of William B. Forbes, who was chief engineer aboard the fishing vessel M. C. Ballard on November 16, 1948. The defendants are transacting business in the district of Massachusetts by an agent and on November 16, 1948, were the owners and operators of the Ballard and the employers of the plaintiff's intestate.

The complaint in Count 1 alleges that on or about November 16, 1948, William

B. Forbes received personal injuries resulting in his death while performing his duties as engineer aboard the Ballard. The complaint further alleges that the death of Forbes was due to the fault of the defendants in their (1) failure to provide and maintain a seaworthy vessel with reasonably safe and proper appliances, (2) failure to provide and maintain a reasonably safe and proper place to work, (3) failure to make reasonable and periodic inspections to determine the above and (4) general negligence. In their answer the defendants denied generally the allegations of negligence and failure to discharge their duty with respect to Forbes. The parties waived Count 2 of the complaint.

The district court had jurisdiction under the Merchant Marine Act, 1920, commonly known as the Jones Act, 46 U.S.C.A. § 688, which incorporates by reference the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U.S.C.A. § 51 et seq.

At the conclusion of plaintiff's evidence the defendants rested and moved for a directed verdict. This motion was denied and the case was submitted to the jury after the judge's charge, to which no exceptions were taken by either party. The jury returned a verdict for the plaintiff in the sum of $65,000. Thereafter the defendants moved that the verdict and judgment entered thereon be set aside and for judgment in accordance with their motion for a directed verdict or for a new trial. The court denied this motion.

The defendants argue that the district court erred in denying their motion on the grounds that (1) there was insufficient evidence to sustain a jury concluding that either Forbes' death was precipitated by electric shock or that the defendants in any respect breached a duty owed to Forbes; (2) there was prejudicial error in allowing the introduction of evidence concerning electricity and in denying defendants' motion to strike such evidence and (3) the damages awarded by the jury were grossly excessive.

We do not agree with the defendants' contention that there is insufficient evidence to support the jury verdict for the plaintiff. The Supreme Court has repeatedly stated that our function on this issue in actions brought under the Federal Employers' Liability Act is only to review the reasonableness of the verdict returned by the jury. Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497.

The Merchant Marine Act, 1920, 46 U.S.C.A. § 688, under which the plaintiff brought this action, states that: "* * * all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. * * *" Thus, the above cited cases set the standards we are to apply in determining the sufficiency of the evidence to support the jury verdict. Reck v. Pacific-Atlantic S. S. Co., 2 Cir., 1950, 180 F.2d 866. With respect to such standards, the court stated in Lavender v. Kurn, supra, 327 U.S. at page 653, 66 S.Ct. at page 744:

> "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate

court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

See also Boston & M. R. R. v. Meech, 1 Cir., 1946, 156 F.2d 109, certiorari denied 329 U.S. 763, 67 S.Ct. 124, 91 L.Ed. 658.

Our review of the record discloses the following evidence on the issue of negligence.

Forbes became the chief engineer on the Ballard about December, 1945. His duties were confined exclusively to the engine room. There was a passageway in the aft end of the engine room leading from the starboard to the port side. On one side of this passageway, an electric switchboard was attached to the aft bulkhead. This switchboard was 28 inches above the floor level and was 32 inches in width and 53 inches in height. A generator was located on the other side of the passageway. It was 17½ inches from the floor level at its point of furthest projection into the passageway. Electric switches, each switch consisting of electric terminals and circuit breakers, were located on the face of the switchboard. The current carrying parts of the switches were exposed and were "alive" with 110 to 120 volts on them at all times. When the handles of the switches were positioned between the electric terminals or "closed", the clearance of the passageway between the switchboard and the generator was about 5 inches. When the switches were open the clearance was about 3 inches. Electric switches were also located on both sides of the switchboard. These switches were enclosed in switch boxes. Stillson wrenches were held on clips attached to the bulkhead between the bottom of the switchboard and the floor. One of the wrenches was in contact with an iron pump on the port side of the switchboard.

On the basis of the above and all the other evidence in the record we believe the jury could reasonably conclude that the defendants were negligent "in whole or in part" with respect to Forbes. The location of the wrenches beneath the "live" switchboard and the narrowness of the passageway between the "live" switchboard and the generator would warrant the jury in finding that the defendants, in the words of the charge to which there were no exceptions: " * * * fail(ed) to exercise the care of an ordinarily prudent shipowner with respect to the place that Forbes was to work and with respect to the appliances, either or both."

On the issue of causation the record reveals the following evidence.

On the morning of November 16, 1948, Forbes was found lying across the port passageway approximately 7 feet from the "live" electric switchboard. He was taken to the Boston City Hospital and pronounced dead on arrival. The death certificate signed by Dr. Leary stated the disease or cause of death to be "Coronary sclerosis, abrasion of ear, laceration of rt. occipital scalp. Collapsed at place of employment." Dr. Leary testified that the laceration on the occipital scalp was a superficial wound. He also testified that, although Forbes suffered from coronary sclerosis, nevertheless a very good collateral circulation had been established and thus some precipitating factor was needed to explain the suddenness of Forbes' death. Fright, unusual exertion, nervous exhaustion and electric shock were specified as possible precipitating factors. The watchman, Dedrick, testified that he talked with Forbes for about fifteen minutes on the morning of November 16, 1948 and that Forbes seemed normal.[1] During this period Forbes was standing beside the

---

1. "Q. What did you notice about his appearance? A. Nothing out of the ordinary. Just that he was—well, he was just the same as he was at any time I met him. We were always raising the deuce and talking some foolishness or something. Q. Was he in good spirits? A. Sure."

starboard workbench and was cutting out a gasket for an oil filter with a pocket knife. The only oil filter in the engine room is located on the starboard side. A two-foot Stillson wrench is used to install the gasket on the oil filter and the installation takes a few minutes. Three to five minutes after Dedrick left Forbes, Dedrick heard that something had happened to Forbes. Only some oily rags and strippings from gasket material were found on the starboard workbench after Forbes was removed from the engine room. The labor involved in starting the engine, and in cutting out the gasket and installing it on the oil filter by using a wrench was not work of such strenuousness as to be the precipitating factor in causing Forbes' death. Dr. Leary stated in his autopsy report that "Careful inspection of the vertical wound on the right ear shows a surface that looks burned up to .8 centimeters in breadth in the midportion of the wound abrasion which extends vertically from the upper edge to the lower." Dr. Leary also testified:

"Q. What would be your description, Doctor, as to the nature of this wound, to your best judgment? A. In the ear?

"Q. The wound in the ear. A. Well, it looked—my leaning was toward a burn. It looked as though it were burned. It wasn't a simple abrasion, in my opinion.

"Q. How did it differ from the characteristics of a simple abrasion? A. Well, it hadn't bled; there was no bleeding. And thirdly, it was brown and looked as though it had been burned.

On the basis of this and all the other evidence we believe the jury would be warranted in concluding that Forbes suffered an electric shock in either obtaining or replacing the two foot wrench in the tool rack beneath the electric switchboard, and that the electric shock, in the words of the charge, "was the active or efficient cause of, or was a substantial factor in causing, the death of Mr. Forbes." The testimony of the medical experts was to the effect that some precipitating factor was necessary to explain the suddenness of Forbes' death. And, although fright, unusual exertion, and nervous exhaustion were possible factors in theory, there was no evidence that these factors were present in this case. See Christie v. Callahan, 1941, 75 U.S.App.D.C. 133, 124 F.2d 825. Thus, what was said in Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 34, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 applies with equal force here: " * * * These and other possibilities suggested by diligent counsel for respondent all suffer from the same lack of direct proof as characterizes the one adopted by the jury. * * *"

The defendants contend that, since plaintiff's expert Dr. Leary only testified that the right ear of Forbes "looked burned", the jury had no evidence before it warranting a conclusion that the right ear of Forbes was burned. This phase of the evidence, the defendants argue, presented a medical question that could only have been intelligently determined by competent medical experts. However, we do not know if the jury did decide the right ear was burned. It was not essential for it to do so in order to return a verdict for the plaintiff because there was evidence that an electric shock may leave no external signs upon a body at all. Even if the jury did conclude that the right ear of Forbes was burned, it was clearly competent to do so on the basis of this evidence and all the other evidence presented. The demand for a positive assertion by Dr. Leary that the wound was definitely a burn ignores "the cautious manner of physicians", Christie v. Callahan, supra [75 U.S.App.D.C. 133, 124 F.2d 831], and such an assertion was clearly not necessary in this action to support the jury verdict. Chicago, M. & St. P. Ry. Co. v. Moore, 8 Cir., 166 F. 663, 23 L.R.A.,N.S., 962; Wigmore on Evidence, 3rd Ed. § 2090.

The defendants also contend that the district court committed reversible error in allowing the introduc-

tion of testimony regarding electricity and in denying defendants' motion to strike all such testimony from the record. We find no merit in this contention. The other evidence in the case clearly reveals the relevancy and materiality of this testimony. See Bartkoski v. Pittsburgh & Lake Erie R. Co., 3 Cir., 1949, 172 F.2d 1007. Also, the trial judge was exceedingly cautious in the proper presentation of the testimony on electricity.

■ A final contention of the defendants is that the damages awarded by the jury were grossly excessive. In previous decisions we have reviewed the action of the trial court only to determine whether or not it committed an abuse of discretion in denying a new trial on the ground that the damages awarded by the jury were grossly excessive. McCoy v. Cate, 1 Cir., 1941, 117 F.2d 194; New York, N. H. & H. R. Co. v. Zermani, 1 Cir., 1952, 200 F.2d 240, certiorari denied, 1953, 345 U.S. 917, 73 S.Ct. 729. What constitutes an abuse of discretion is often difficult to define on this issue and will depend "upon the facts of each case, the nature of the damages, the wrong to be remedied." Bucher v. Krause, 7 Cir., 1952, 200 F.2d 576, 587, certiorari denied, 1953, 345 U.S. 997, 73 S.Ct. 1141; Affolder v. New York, C. & St. L. R. Co., 1950, 339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683, indicates that if the damages are "monstrous", the verdict should be set aside. In the instant case we find no abuse of discretion by the district court.

Forbes was almost fifty-three years old at the time of his death. He was survived by a fifty year old widow and eight children, five of whom were minors. The minor children lived with their parents and their ages varied from eight to eighteen years. He supported his wife and minor children, although one of them was working at the time of Forbes' death. Forbes was a very steady worker and his average earnings for the last four years prior to his death were about $6,500, of which he contributed about $5,500 per year to his family. On the basis of the United States Census Tables for 1939–1941 for all white males, he had a life expectancy of 19.75 years. These census tables included both those in good and poor health. Although Forbes suffered from coronary sclerosis, nevertheless there was medical testimony that a good collateral circulation had been established. There was also medical testimony that the heart disease was a very slowly progressive one. Dr. Welch testified that it was possible Forbes would live his normal life expectancy.

The amended judgment and order of the district court are affirmed.