Donat F. COTE, Plaintiff,

v.

Frank GENTILE and Frances B. Gentile,
Defendants.

Civ. No. 9978.

United States District Court
D. of Connecticut.

July 28, 1966.

Robert J. Gillooly and John R. Mc-Grail, of Gillooly, Eastman & McGrail, New Haven, Conn., for plaintiff.

Morris Tyler and Kimberly B. Cheney, of Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., for defendants.

TIMBERS, Chief Judge.

The chief question presented by defendants' motion, pursuant to Rules 50 (b) and 59, Fed.R.Civ.P., for judgment N.O.V. or, in the alternative, for a new trial, is whether the jury's verdict of $33,000 in favor of plaintiff in this case of admitted negligence on the part of defendants is so "fantastic" as to be excessive. Diapulse Corporation v. Birtcher Corporation, 362 F.2d 736, 744 (2 Cir. 1966); La France v. New York, New Haven and Hartford R. Co., 292 F.2d 649, 650 (2 Cir. 1961), affirming 191 F.Supp. 164, 168–171 (D.Conn. 1961); Dagnello v. Long Island Railroad Company, 289 F.2d 797 (2 Cir. 1961).

The Court, after reviewing the record in the light of defendants' motion and aided by excellent briefs from both sides, holds that the verdict, adequately supported by the evidence, although substantial, is not excessive; and that defendants' other claims, having been fully considered by the Court, are without merit. Defendants' motion accordingly is denied.

The critical problem which confronted the jury in this case, assuming it found causal connection between plaintiff's injuries and the accident of September 5, 1962, was to award fair and reasonable damages to plaintiff for the injuries he

sustained in *that* accident, without charging defendants for injuries he admittedly sustained before and after the accident in question.[1] The jury's task was not a simple one. There was no formula for mathematical certainty in arriving at a verdict; indeed, there was less basis for certainty than in the ordinary negligence case, uncomplicated by prior or subsequent injuries. Nevertheless the assessment of damages here was peculiarly appropriate for jury determination. And the Court is satisfied that the jury, after 2½ hours of deliberations at the end of a 3 day trial, performed its duty with fidelity and intelligence in returning a fair and reasonable verdict.

At the time of the accident on September 5, 1962, plaintiff was a 34 year old over the road truck driver and had been so engaged for the past 12 years, having clocked approximately 600,000 miles as a truck driver. He was married and had 6 children. During the period 1946 to 1948, while serving as a paratrooper with the United States Air Force, he participated in 38 jumps. He sustained injuries to his head, neck and chest in a service-connected accident in 1947 which necessitated extensive hospitalization and eventually a medical disability discharge in 1948. Beginning in December 1949 and up to the date of the accident here involved in September 1962, plaintiff earned his livelihood continuously as a truck driver except for periods of hospitalization in V.A. hospitals.

On the night of the accident plaintiff was driving a loaded tractor-trailer from Philadelphia to Hartford. While pro-

1. The Court attempted, at the close of the formal charge, to summarize for the jury its critical task in the following colloquial language, to which no exception was taken (Tr. 351–353):

"Now that, ladies and gentlemen, concludes my charge to you in this case. In a way, this question which is being put to you is, I think, a relatively simply stated question. There is considerable evidence and considerable facts which you must consider and weigh in order to reach your determination. But just put in a nutshell, I think it is just as simple as this, as I perhaps indicated to you at the outset. In a collision case of this sort normally there are two principal issues to be determined—first, that of liability, whether the defendant or defendants were at fault. That has been admitted here. Therefore, the only remaining issue is that of damages.

"Now the issue of damages in this case is slightly out of the ordinary question to be determined in a negligence case, because there are claims that the plaintiff had been injured before and that he was injured after this accident. Now that sequence of events —the fact that the plaintiff may have been injured before and he may have been injured after the accident—alone does not preclude his recovery here. What it does present is a question for judgment on your part, a question that entails, in addition to finding whether the injuries of which he complains were the proximate result of the defendant's negligence—I think your primary concern is to be sure that the defendant is not charged with anything that he did not cause. It is just as simple as that.

"The defendant has admitted he was at fault. But in fairness, the defendant should not be required to pay for what he did not cause, whether after the accident or before the accident.

"By the same token, perhaps the other side of the coin, as a matter of just elemental common fairness, the defendant must take the plaintiff as he was on that night. The law does not say that only healthy plaintiffs can recover. The fact that a man happened to have been injured or was suffering from some disability, no matter what it was, on the night of the accident, does not preclude his recovering from defendant. It simply, as I said before, presents a situation where you, as intelligent, mature, discriminating citizens, will be careful to be sure of two things, and I think it really boils down to this: Be fair to the defendant, to be sure the defendant is not charged for something he did not cause. But on the other hand, be fair to the plaintiff; and if he is entitled to recover, bear in mind that the fact he happened to either have been injured before or injured afterwards does not preclude his recovering, and the defendant must take a plaintiff as he finds him.

"That, for whatever it may be worth, is in my view a very simple and nutshell statement of the task in front of you ladies and gentlemen."

ceeding in a line of traffic in a northerly direction on Route 15 in the Town of Wethersfield, he saw flashing lights ahead indicating trouble. He slowed down to 12 m. p. h. and put on his four-way flashers. At the Brown Street underpass his trailer was struck suddenly in the rear by an automobile driven by defendant Frank Gentile. The impact was of such force as to result in damage to the rear portion of the trailer (constructed of diamond plate steel and 3 inch channel iron) and the total loss of defendants' automobile. Gentile sustained a crushed chest as a result of being thrown against the steering wheel. Plaintiff's initial reaction was that of being stunned and suffering from a headache, although he continued to drive the tractor-trailer on to Hartford, from there to Springfield and thence back to Secaucus, New Jersey, at which point he found he was unable to drive any further. Upon reaching his home in Newburgh, New York, he was examined and treated by a doctor on the staff of St. Luke's Hospital where plaintiff's wife was employed.

His subsequent medical treatment by various doctors, a neurologist, a psychiatrist and a chiropractor for the injuries sustained in the accident of September 5, 1962 was fully explored by counsel for both sides before the jury. Bills totaling $417.85 for such medical treatment were received in evidence. Medical testimony establishing the causal connection between plaintiff's injuries and this accident was uncontroverted: plaintiff relied upon the depositions taken by defendants of Dr. Hutchins and Dr. Echlin. Dr. Hutchins testified that at the time of his examination of plaintiff in May 1963 —8 months after the accident—he was carrying his head inclined somewhat to the right, was having trouble focusing and seeing things clearly and was bothered by aches in his shoulders, arms and head; all of which injuries, according to Dr. Hutchins, were either caused or aggravated by the September 5 accident. Dr. Echlin testified that at the time of his examination of plaintiff in July 1963 —10 months after the accident—plaintiff "had a neck strain causally related to the accident of September, 1962."

Counsel for both sides also fully explored before the jury the details of plaintiff's subsequent accident of December 3, 1962 which resulted in some injury to his lower back and for which he received compensation in amount of $1802; this was paid to Brad Leasing Company, the corporation in which plaintiff had a one-half interest. And the Court instructed the jury, without exception by defendants, how they were to consider such evidence. Supra note 1.

The most substantial element of damage claimed by plaintiff, aside from pain and suffering, was the impairment of his earning capacity. This was reflected in his eventually having to give up entirely, from the latter part of 1962 until early 1966, over the road truck driving—the vocation from which he had derived his livelihood for approximately 12 years after his discharge from the Air Force and during the course of which he had clocked some 600,000 miles of driving. His inability to continue to work as a truck driver resulted in, aside from his loss of some $1500 in drawings from the business, the loss of his one-half interest in Brad Leasing Company, the trucking corporation in which he was the sole working proprietor. While the profits from this business had been modest and the business was hardly a thriving one, an important factor which the jury properly could have taken into account, Diapulse Corporation v. Birtcher Corporation, supra at 744, as reflecting the value of plaintiff's lost one-half interest, was that the business was young and growing, as indicated by its purchase of a new $20,000 tractor-trailer in October 1962.

The Court charged the jury, without exception by defendants, that if they found causal connection between plaintiff's injuries and the accident of September 5, 1962, their award of damages should take into account these elements: (i) actual medical expenses, (ii) loss of earnings, (iii) loss of interest or **equity in plaintiff's truck driving busi-**

ness, (iv) loss of earning capacity and (v) pain and suffering. While the verdict did not set forth a separation or breakdown with respect to these several elements of damage, La France v. New York, New Haven and Hartford R. Co., supra at 650—and none was requested—there was, in the opinion of the Court, ample evidence to support the verdict in the amount rendered.

■ Defendants urge that the Court erred in refusing to charge, as requested by defendants, that the jury could draw an inference adverse to plaintiff because of his failure to call Dr. Haig. The Court did charge generally on the inference that the jury might, but was not required to, draw with respect to the failure of either party to call a witness available to such party and in a position to testify to a material fact. The Court declined to single out Dr. Haig for special treatment.

■ Defendants also assert that the verdict "is clearly founded on passion or prejudice or upon the improper consideration of insurance." Aside from the reference to insurance, defendants point to nothing in the record in support of their claim of passion or prejudice and the Court finds no basis whatsoever for such a claim. Indeed, the entire presentation of plaintiff's case—including the testimony of plaintiff himself and the conduct and argument of plaintiff's counsel—was characterized throughout by restraint and understatement. Defendants' oblique reference to "improper consideration of insurance" is particularly ill-founded, since it was defendants who introduced the subject of insurance into the case by calling as witnesses an insurance investigator and an assistant district claims manager and marking in evidence various insurance documents through these witnesses. Moreover, Judge Hincks some years ago laid bare the shibboleth that knowledge on the part of jurors that a defendant in a negligence case is insured somehow softens a verdict out of considerations of sympathy or prejudice: "But only undue cynicism will support the thesis that knowledge of the presence of an insurer's interest will necessarily distort a juror's judgment." Schevling v. Johnson, 122 F.Supp. 87, 89–90 (D.Conn.1953), aff'd, 213 F.2d 959 (2 Cir. 1954); see 3 Moore's Federal Practice ¶14.12, at 576 (2d ed. 1964).

Motion denied.